Richard Snell, Appellee, v. S. S. Kresge Company, Appellant.

No. 43044.

November 19, 1935.

Helsell, Burnquist, Bradshaw & Dolliver, for appellant.

Maher & Mullen, for appellee.

Albert, J.—The substance of the plaintiff's petition is that the plaintiff and the defendant owned or occupied adjacent buildings in the city of Fort Dodge, and that they so owned or occupied said buildings during all the time in controversy herein. The plaintiff had a heating plant in his building, and on the 13th day of August, 1926, the parties herein entered into a written contract by the terms of which the defendant agreed to pay to the plaintiff $1,800 for heating its building from the 1st day of October, 1926, to the 1st day of May, 1927. For the successive years from that time forward the plaintiff continued to furnish heat for the Kresge building until the winter season of 1933-34, and the defendant paid the aforesaid amount except for the season commencing October 1, 1933, and ending May 1, 1934. It is for this season's services in furnishing said heat that this action is brought. The plaintiff further alleges that the heat was furnished for the season of 1933-34 under an agreement that defendant was to pay $1,800 therefor. Defendant filed an answer and, after admitting certain allegations of plaintiff's petition which are not material here, alleged that the two upper floors of the Kresge building were abandoned in January,

1933, and that the radiators were cut off, and therefore the amount of heat furnished by the plaintiff was reduced by this reduction of the radiation in the Kresge building from 4,462.5 square feet to 1,842 square feet, and that through a mistake the defendant paid the plaintiff the sum of $1,800 for heating the building for the season of 1932-33; and that during the year of 1933-34 the plaintiff continued to furnish heat to the defendant for the total amount of radiation of 1,842 square feet. The value of the heat furnished from October 1, 1932, to January 1, 1933, was $904.18, and the value of the heat furnished for the season of 1933-34 amounted to $738.58. Wherefore, the defendant prayed that plaintiff's petition be dismissed and that the court determine and adjust the payments made for the heat for the season of 1932-33, and "reform said implied contract to meet the fair and reasonable value of the heat furnished for said years 1932-33, and defendant further prays for determination in equity of the amount due for the heating season of 1933-34." At the time of filing this answer the defendant filed a motion to transfer the cause from the law to the equity calendar, which motion was overruled.

It will be noted that the original written contract between these parties terminated on the 1st day of May, 1927. Under the allegations of the petition, from that time forward the plaintiff states in his argument that he bases his cause of action upon a contract implied under the theory that, under the circumstances, the defendant, by its acts and conduct, impliedly promised to pay $1,800 for the steam furnished for heating for the winter season of 1933-34. The defendant by its answer also insists that no written contract existed between the parties, but only an implied contract; and:

"That said implied contract, if any, should be reformed to meet the understanding had between the parties, and said rate for heat fixed at the fair and reasonable price as understood by the parties at all times herein. That unless said implied contract, if any, is reformed the defendant is without remedy at law, and will suffer irreparable damage by reason thereof."

The defendant seeks in its answer to have said implied contract reformed, which presents really a novel question. This court has universally announced the rule that equity cannot reform a contract. All it can do is, where a written instrument

fails to express the true contract or agreement of the parties entered into prior to the time such contract or agreement was reduced to writing, determine what the actual contract was as made between the parties. Among other Iowa cases announcing this rule are the following: Nowlin v. Pyne, 47 Iowa 293; Stafford v. Fetters, 55 Iowa 484, 8 N. W. 322; Breja v. Pryne, 94 Iowa 755, 64 N. W. 669; Marshall & Sharp v. Westrope, 98 Iowa 324, 67 N. W. 257; Day v. Dyer, 171 Iowa 437, 152 N. W. 53; Heard v. Nancolas, 187 Iowa 1045, 175 N. W. 13. See, also, 53 C. J. p. 908, section 5.

The very fundamental theory of the doctrine of reformation is that there must be a writing which is claimed to be the contract between the parties. Under such circumstances, if the writing does not express the actual contract that was made by the parties, equity will determine what the actual contract was. We know of no case which holds that an implied contract can be reformed. The very foundation or basis of the whole doctrine of reformation applies only where there is a writing. Briefly summarized, this case resolves itself into a proposition of a suit on an implied contract, with a defense that the implied contract, in so far as the compensation is concerned, was not as the plaintiff claimed it was. This is all law and not equity.

In the case of Allgood v. Fahrney, 164 Iowa 540, 549, 146 N. W. 42, 46, an action was started by a real estate agent for his commission. His contract of employment was oral. We there said:

"Plaintiff claims that he has alleged in his answer certain equitable matters which entitle him to have the case so transferred. He seems to base this on the idea that equity has jurisdiction to reform contracts, and that his rights could not be protected until the contract, as stated by plaintiff in his petition, was reformed. But it is apparent, from this record, that both the contract between the plaintiff and the defendant and the contract between defendant and Peppers rest in parol. There was no writing evidencing either contract. Equity will not make contracts for parties, nor *reform contracts*. Equity only takes cognizance where the contract has been reduced to writing, and the writing does not express truly the actual contract entered into between the parties. Where the writing, through fraud or mistake, does not express the true contract, equity will

reform the writing, which is the evidence of the contract, to conform it to the real contract, as actually made between the parties. But where the contract rests in parol, parol evidence is necessary to establish the contract, and the contract is that which the evidence shows it, in fact, was, and is enforced according to the proof, whether in law or in equity. This is clearly a law action; and the court did not err in refusing to transfer the cause to equity for the purposes suggested by the defendant.''

No other ground for equitable jurisdiction is urged. It is our conclusion that the respective claims of both the plaintiff and the defendant, having reference to implied contract, are wholly matters of law, and there is nothing involved by reason of the plea of the defendant which entitled it to a transfer to equity. This was the ruling of the district court. We think it is right.—Affirmed.

KINTZINGER, C. J., and MITCHELL, POWERS, ANDERSON, DONEGAN, PARSONS, RICHARDS, and HAMILTON, JJ., concur.