In the Matter of the ESTATE of Ernest C. CORY, Deceased.

LINDGREN and Davis, Appellants,

v.

Melville V. CORY, Executor of the Last Will and Testament of Ernest C. Cory, Deceased, and Melville V. Cory, Individually, Appellees.

No. 54331.

Supreme Court of Iowa.

March 11, 1971.

Lindgren & Davis, Des Moines, for appellants.

Charles E. Feight, Ankeny, and Herrick, Langdon, Belin & Harris, Des Moines, for appellees.

MASON, Justice.

This is an appeal by Lindgren and Davis, attorneys, from the ruling and order of the trial court on objections to the final report of Ankeny State Bank as executor of the estate of Ernest C. Cory.

Ankeny State Bank was named as executor of the will of Ernest C. Cory which was dated January 18, 1965. This will was the subject of a will contest, trial of which resulted in a jury verdict setting the will aside. Proponents, other than Ankeny State Bank, the executor, appealed and the case was affirmed by this court. (See In re Estate of Cory, 169 N.W.2d 837 (Iowa 1969) ). The opinion was filed on July 24, 1969, and the rehearing was denied on September 15. On September 18 the earlier will of Ernest C. Cory, dated January 21, 1956, was admitted to probate, and Melville V. Cory qualified as executor. He is still acting in this capacity.

On October 17, 1969, Ankeny State Bank filed its final report in which it asked that its fees and the fees of its attorneys be allowed. The statement of Lindgren and Davis, attorneys, originally attached to the report named no amount. By amendment filed on October 31, the statement of Lindgren and Davis asked for $1678.50 for their ordinary services, $1595.00 for extraordinary services other than services in connection with the will contest and $16,277.15 for services in the trial court in the will contest making a total amount requested as attorneys' fees the sum of $19,551.00.

Melville V. Cory, as executor, and as an individual, filed objections to the final report. The report and the objections were heard by a judge of the Polk district court and evidence was taken which included the files and the record in the will contest.

Thereafter, the court filed findings of fact and conclusions of law "that there was no just cause for the entry of the Executor and its attorneys or their continued participation in the will contest" and that "This finding is taken into account in determining and fixing the fees of the Executor and its attorneys."

The court ordered that the executor should be allowed $1678.50 for its ordinary services and $1200.00 for its extraordinary services, making a total allowance to the executor of $2878.50. The court found the

amounts claimed by Lindgren and Davis for attorney fees were not reasonable, and that $1678.50 for ordinary services and $2200.00 for extraordinary services, a total of $3878.50, was a fair and reasonable fee for the services of said attorneys.

Ankeny State Bank, the executor, did not appeal. Lindgren and Davis, its attorneys, have appealed alleging the trial court was in error in holding that under the facts, there was not a sufficient showing of "just cause" for participation by the executor and its attorneys in the will contest.

Before considering this contention we narrate sufficient facts to identify the parties involved and set the events leading to the claim for attorneys' fees.

Ernest C. Cory died May 30, 1965. His marriage to his first wife, Nellie, ended in divorce. Their two children, Albert D. Cory and Gladys Cory Spring are two of the three children surviving the testator. Melville, the other surviving child, was born to testator and his second wife, Edna, who died in 1963. Cory had married his surviving widow, Edith, in 1964.

The January 18, 1965 will had been executed in California. It was admitted by probate in the Polk district court June 14, 1965. The value of the estate's assets was fixed at $112,820.33 by the inheritance tax appraisers.

November 2, 1965 Melville Cory, represented by attorneys Smedal and Feight, filed the will contest mentioned. November 24, Coppola and Trout as attorneys for Edith Cory, Gladys Cory Spring and Albert D. Cory who were all of the beneficiaries in the will contest other than Melville, filed answer to the petition to set aside the will.

At this point all of the named beneficiaries, that is those who were personally interested in the estate, were represented in the will contest by counsel of their own choosing.

November 29, 1965 Lindgren and Davis as attorneys for the Ankeny State Bank ap-peared in the will contest and filed motion to strike. Other than being named executor, the bank had no interest in the January 18, 1965 will. No authorization for the bank to participate in and employ counsel as a proponent of the will during the will contest was ever obtained from the court.

The will contest came on for trial in May 1967. Coppola and Trout were personally present at all times during the trial representing their clients as proponents and named beneficiaries under the will. Mr. Smedal was present representing Melville Cory. The jury found the will dated January 18, 1965 was the result of undue influence and the trial court entered a judgment setting it aside.

After the trial, the bank filed application asking for instructions with reference to participating in the appeal to this court. September 29, 1967 the probate court made an order directing the executor to continue to act in preserving the property but not to participate in the appeal.

I. The first problem for determination is the extent of our review—whether for correction of errors at law or de novo as in equity. Rule 334, Rules of Civil Procedure.

 This is ordinarily important since in a law action tried to the court under the limited extent of our review its findings of fact have the effect of a special verdict and are equivalent to a jury verdict and if supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f) (1), R.C.P. Whereas, in equity it is our duty in a de novo review to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any preserved in the course of trial proceedings.

As stated, the appeal here arises from the court's ruling on objections to the bank's final report as executor of the 1965 will. Before adoption of the Iowa Probate Code it was the law in this jurisdiction that a hearing before the trial court upon objec-

tions to the fiduciary's report and resistance thereto being a proceeding in probate was at law and not in equity. In re Estate of Finarty, 219 Iowa 678, 680, 259 N.W. 112, 114; In re Estate of Pierce, 245 Iowa 22, 29, 60 N.W.2d 894, 899.

Answer to the problem stated turns on whether section 633.33 of the probate code dictates any change in the law in this respect. This section provides:

"Nature of proceedings in probate. Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity."

Following this section in the Iowa Code Annotated there is this Bar Committee comment:

"New. This section specifies the three types of proceedings which are triable as law actions, with the parties being entitled to a jury trial on the issues presented. All other matters arising in probate will be tried by the court as equitable proceedings. This section does not divide the probate court into a court of law and a court of equity, but simply prescribes the procedure applicable to the matters before it."

■ Attorney fees are included in the definition of costs of administration. Section 633.3(8). Contests involving costs of administration are not included in the three categories mentioned as triable as law actions unless, of course, it be determined that a hearing on disputed items designated as costs of administration is "for the establishment of contested claims." Such construction is untenable in view of the difference between charges and claims against an estate.

■ There is a basic distinction between debts of a decedent and those items classified as charges under the definition contained in the Code. The latter do not stand on the same ground as his debts in respect to such estate. It is not necessary for their payment that they be filed as a claim or debt against it since the obvious purpose of section 633.410 is to provide the personal representative with notice concerning extent and nature of claims outstanding against the estate he administers in order to enable him to effect a prompt and orderly settlement thereof. When charges are made by the estate or someone entitled to bind the estate, such notice to the personal representative would be superfluous and we will not assume the legislature intended to burden the fiduciary with the necessity of giving notice to himself of that concerning which he already has or should have actual notice.

Claims against an estate must be filed within the time specified in the Code. Yet, section 633.410 which prescribes the limitation on filing claims against a decedent's estate expressly excludes charges. Costs of administration are included in the definition of charges. Section 633.3(4).

Costs of administration are cared for in a different manner. The personal representative is required to render an account of his administration of the estate in his final report and at such other times as the court may direct. Sections 633.469 to 633.-477. Those charges incurred during administration must be submitted and approved by the probate court after notice and hearing unless waived. Section 633.-478. Fees of the personal representative for services rendered and those of his attorney are to be determined by the court. Sections 633.197 and 633.198.

■ It is our opinion hearing on objections and resistance to charges against an estate is not a hearing "for the establishment of contested claims" against a deceased person within the meaning of section 633.33.

■ We hold section 633.33 dictates that hearings on objections to a fiduciary's report and resistance thereto are to be tried

by the court as a proceeding in equity; that hearings on charges asserted to have been incurred in administration of an estate and resistance, if any, thereto are to be tried in the same manner.

■ It follows that on an appeal this court's review is de novo.

We are aware in arriving at this decision it nullifies many of our cases decided before adoption of the probate code holding probate cases were law actions and the decision of the judge in such action had the force and effect of a verdict on appeal. Apparently, this was anticipated. Dwight G. McCarty, lawyer and author, made this statement in his portion of workshop outlines presented at the Iowa State Bar Association June 24-26, 1964:

"That requirement that the probate matters shall be tried as a proceeding in equity makes another important change in the law. Being an equity action, on appeal it is now tried de novo. That nullifies a long line of cases that held that probate cases were law actions and that the decision of the judge in a probate action had the force of a verdict on appeal. Instead of a one judge decision, except for errors, as before, now on appeal, the court will review the entire case on its merits de novo."

■ II. This court has held that upon appeal it will consider the case as being in the same forum in which it was tried below. Hess v. Hess, 191 Iowa 52, 53-54, 181 N.W. 760; McCulloch Investment Co. v. Spencer, 246 Iowa 433, 436, 67 N.W.2d 924, 926; Davenport Osteopathic Hosp. Ass'n v. Hospital Service, Inc., 261 Iowa 247, 253, 154 N.W.2d 153, 157; Flynn v. Michigan-Wisconsin Pipeline Company, 161 N.W.2d 56, 60 (Iowa 1968).

Appellant in seeking reversal assigns "errors relied upon" and appellee asserts that the matter being in probate in not triable de novo on appeal. Citing in support In re Estate of Hale, 231 Iowa 1018, 2 N.W.2d 775, decided in 1942. The Iowa Probate Code became effective January 1, 1964.

However, we do not believe this is a case for application of the rule mentioned. Testimony at the hearing on objection to the fees of the fiduciary and those of its attorneys cover several pages in the record. So far as our examination has revealed, three objections were made during the course of the hearing. In each instance the evidence objected to was received subject to the objections, the ordinary procedure for a trial in equity. It is our opinion the trial court correctly conducted the hearing as an equitable proceeding. Our review will therefore be de novo.

III. The trial court in fixing fees of the fiduciary and its attorneys for ordinary services and those for extraordinary services as permitted by section 633.199 found as a fact there was no just cause for an entry of the executor and its attorneys or their continued participation in the will contest and concluded as a matter of law the executor and its attorneys, under the circumstances of the case, took part in the will contest without just cause, since all parties in interest in the contest were voluntarily before the court and represented by their own counsel and had joined issue therein before the executor entered the contest which was one of interest between the individual proponents and contestant.

Appellants contend the court erred in basing its ruling on the conclusion the executor did not have "just cause" as required by section 633.315 to participate in the will contest involved. This section provides:

"Allowance for defending will. When any person is designated as executor in a will, or has been appointed as executor, and defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney fees in such proceedings."

There is no serious factual dispute bearing on the issue presented by appellants' contention.

Appellant attorneys, in addition to performing the regular services necessary for probating decedent's estate up until the filing of the bank's final report, participated in the will contest, devoted considerable time to briefing possible issues, interviewing witnesses and taking depositions. No question as to their good faith is involved. The question is whether they carried their burden of establishing just cause for the services rendered.

In In re Estate of Law, 253 Iowa 599, 604, 113 N.W.2d 233, 236, this court said: " * * * [W]e are committed to the rule that in order to obtain court authorization to employ counsel and obligate the estate for such fees regardless of the outcome of the contest, it is the duty of the applicant to show by the record just cause for such expenditure."

We point out again that at the commencement of the will contest all of the named beneficiaries were represented by counsel of their own choosing. They were all adults and the sole and only heirs at law of decedent. No bequest was made to any other party. No minors, charities or other legatees are involved who might have been affected by the outcome.

The cited case, heavily relied on by objector as support for the trial court's decree, was decided by a unanimous court upon similar factual circumstances after permission for interlocutory appeal. The court in reaching the conclusion as to the necessity of just cause reviewed five of the six Iowa cases cited by appellants.

The nominated executor in In re Estate of Law filed application to employ legal counsel, for attorney fees and costs to secure a witness from California, medical testimony and the taking of depositions to sustain decedent's will. Appellants resisted on the ground all devisees and heirs of decedent were adults and had appeared and pleaded pro or con in the contest. The trial court approved the application and ordered "the reasonable costs of necessary service of said counsel to be paid from the assets of the decedent's estate regardless of the result of the will contest, * * *." In reversing, this court found the record failed to disclose such cause which would justify the trial court's prior authorization to the executor to employ counsel and obligate the estate for such expenses regardless of the outcome of the contest.

This language from the court's opinion, 253 Iowa at 602–604, 113 N.W.2d at 234–235, is apposite to the issue here:

"Generally speaking, no positive or dogmatic pronouncements upon the question as to when a nominated executor may legally obligate the estate for expenses or attorney fees in an effort to probate or sustain a will are wise or possible. The extent of his duty depends upon the peculiar circumstances of each individual case. In other words, the circumstances must reveal a just cause for such expenditures. * * * [citing authorities] It is stated in section 104, Model Probate Code, by Simes, page 120: 'When any person designated as executor in a will, or the administrator with the will annexed, defends it or prosecutes any proceedings in good faith and *with just cause* for the purpose of having it admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements including reasonable attorney's fees in such proceedings.' * * * [emphasis appears in the court's opinion]

"Although on occasions we have stated it was the duty of the named executor in a will to offer it for probate and make all reasonable efforts to sustain its validity when contested, in all those cases we found that duty was affected by the circumstances *which had reasonably required or justified* his active participation in the matter in the interest of the estate. * * * [citing authorities]

"On the other hand, where the circumstances revealed that all the parties in interest were voluntarily before the court and had joined issue as between themselves, we have held there was *no substantial estate*

interest left and thus no just cause for the nominated executor to incur expenses or attorney fees in the contest. * * *. Thus, where the contest is narrowed down to one of personal interest only between proponents and contestants, attorney fees incurred by the nominated executor in the contest have not been allowed, indicating, at least while those conditions exist, there was no just cause for incurring attorney fees at the expense of the estate. * * * [citing authorities]

"When special estate interests are disclosed or just cause appears, we have usually approved attorney fees for a nominated executor's effort to sustain the will by active participation in the contest. * * * [citing authorities]."

In re Estate of Law was decided February 6, 1962. The portion of the Model Probate Code quoted and relied on is substantially identical with our probate code, section 633.315, formerly section 633.314 in the Code as originally adopted. The committee comment notes the section was adopted from section 104 of the Model Probate Code. The court's reliance on this section of the Model Probate Code strengthens our conclusion the case is controlling on the issue presented by the appeal before us.

 Existence of just cause is a question of fact. In our de novo review we find the evidence insufficient under the pronouncements in In re Estate of Law to sustain a finding appellants had established just cause for their participation as attorneys for the bank in the will contest under the factual circumstances related.

Appellants' contention that "good faith and just cause" contained in section 633.315 refers to a reasonable belief on the personal representative's part invalidity of the will is without merit.

Appellants' contention stated supra in this division is not sustained.

IV. Appellant attorneys asked a total of $19,551.00 as fees for ordinary and extraordinary services. They attributed $16,277.50 to preparation and trial of the will contest and $1687.50 to ordinary services rendered the bank in probating the estate. This was pointed out earlier.

 We determine appellants should be allowed $1687.50 for ordinary services rendered the bank. Taking into consideration our finding there was lack of just cause for appellants' participation in the will contest, we find $2200 is a reasonable fee for all their extraordinary services and hold they should be allowed this additional amount less the credit stated by the executor and its attorneys in the final report as amended, (this being $800 on the attorney fees).

The trial court's decree is in all respects.

Affirmed.

All Justices concur.